**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| REGINA BARTON HUDSON, | Case No. 1:20-cv-212 |
| Plaintiff, | McFarland, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Regina Barton Hudson filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED, because it is not supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

In June 2016, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), and a protective application for Supplement Security Income ("SSI"), alleging she became disabled on August 12, 2016.[1] Plaintiff alleges she is disabled due to cervical degenerative disc disease, a torn rotator cuff and arthritis. After her claim was denied

---

[1] Plaintiff's original application alleged a disability date of September 14, 2014, but she subsequently amended that date to August 2016 based upon a four month period in which she attempted to return to work 20 hours per week. Curiously, despite the amendment, the administrative record notes that the part-time period of employment in 2016, during which she earned only $4015, "was not sga [substantial gainful activity]." (*See* Tr. 270, 241).

initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an ALJ.

On October 17, 2018, Plaintiff appeared with counsel and gave testimony before ALJ Cristen Meadows; a vocational expert also testified. (Tr. 33-71). Plaintiff was 54 years old on her alleged disability onset date, which is considered "closely approaching advanced age" under social security guidelines. She had progressed to the "advanced age" category, at 56, as of the date of the hearing. She has a high school education. Plaintiff testified that she spent years working as a meat cutter before obtaining a factory job as a wire harness assembler. She worked in that job for 9 years until her employer moved its operations to Mexico in 2014. (Tr. 43, 272). Following a period of unemployment, Plaintiff attempted to return to work part-time as a meat cutter in 2016 but was unable to sustain that work due to her impairments.

On December 21, 2018 the ALJ issued an adverse written decision. (Tr. 15-25). The ALJ determined that Plaintiff has severe impairments of degenerative disc disease, history of cervical spine fusion, degenerative joint disease of the bilateral shoulders, and carpal tunnel syndrome. (Tr. 18). In addition, the ALJ noted a medical history of depression and hearing problems, but determined that those impairments are nonsevere. (Tr. 18). In this judicial appeal, Plaintiff does not dispute the ALJ's determination that none of her impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (Tr. 19).

The ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a restricted range of light work, subject to the following limitations:

> [T]he claimant can frequently climb ramps or stairs and frequently climb ladders, ropes or scaffolds. She is limited to frequently kneeling, stooping,

> crawling, and crouching. The claimant must have no exposure to hazards, such as unprotected heights and dangerous moving machinery.

(Tr. 19). Based upon this RFC, the ALJ concluded that Plaintiff is capable of performing her past relevant work as a wiring harness assembler. (Tr. 24). Alternatively, the ALJ concluded that Plaintiff could perform other jobs that exist in significant numbers in the national economy, including counter/rental clerk, bus monitor, and protective clothing issuer. (Tr. 25). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In her appeal to this Court, Plaintiff argues that the ALJ erred: (1) by incorrectly evaluating the medical opinion evidence as consistent with light work; (2) by failing to classify her prior relevant work as a composite job, involving some medium work; (3) by improperly discounting her subjective complaints; and (4) by failing to include all relevant limitations in the hypothetical posed to the vocational expert.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

4

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B.   Plaintiff's Claims**

**1.  Evaluation of Medical Opinion Evidence**

The definition of light work requires "a good deal of walking or standing," generally considered to be up to six hours of standing and/or walking in an eight-hour day. *See* 20 C.F.R. § 404.1567(b). The ALJ determined that Plaintiff was capable of those postural walking and standing activities, expressly relying upon the opinion of an examining consultant, Dr. Olayinka Aina.

Dr. Aina examined Plaintiff approximately two months after her alleged onset of disability, on October 18, 2016. During the exam, Plaintiff reported pain in her low back, neck and bilateral shoulders. In addition to limited range of motion in Plaintiff's back and neck, Dr. Aina found an inability to squat or to walk on her heels or toes. (Tr. 376). Based upon his examination, Dr. Aina opined that Plaintiff should be able to lift, pull and push 20 pounds occasionally, and 10 pounds frequently, which is consistent with the light work exertional level. Dr. Aina further opined that handling objects, hearing, speaking and short traveling are all "unaffected" by Plaintiff's limitations. However, he expressly stated that the same could not be said of "[p]rolong[ed] sitting and standing <u>for more than one hour</u>," which "<u>would be affected</u>" by Plaintiff's physical limitations. (Tr. 376, emphasis added).

5

The ALJ assigned "good weight" to the examination report of Dr. Aina, and clearly relied upon the functional limitation opinions expressed by Dr. Aina to formulate Plaintiff's RFC. However, the ALJ misstated the findings in Dr. Aina's report when she paraphrased the opinions as consistent with the type of prolonged standing required to perform work at the light exertional level:

> Dr. Aina reported the claimant was likely able to lift, pull, and push 20 pounds and 10 pounds frequently… Dr. Aina further noted the claimant <u>should be able to</u> handle objects and <u>sit or stand for prolonged periods</u>.

(Tr. 23) (emphasis added). As noted, Dr. Aina's report actually states the opposite: that Plaintiff's limitations would affect her ability to stand or walk for any "prolonged" period of greater than one hour.

The only medical opinions in the record besides Dr. Aina's opinions at the time of the hearing were the opinions of two non-examining consultants. Like the ALJ, the two state agency reviewers placed "great weight" to Dr. Aina's one-time examination report. (*See* Tr. 85-86, 120). However, the state agency reviewers appear to have inadvertently overlooked Dr. Aina's postural limitations concerning standing or walking. With no discussion of Dr. Aina's contrary view, the consultants opined that Plaintiff could stand or walk about six hours in an eight hour day – an opinion plainly at odds with the report on which they expressly relied.

Evaluating the opinions of the two non-examining consultants, the ALJ afforded them less weight than the opinions of Dr. Aina, giving them only "some weight." (Tr. 23). While accepting their opinions that Plaintiff could stand or walk up to six hours as required for light work (which the ALJ believed to be consistent with Dr. Aina's report), the ALJ rejected other opinions that offered greater restrictions than those offered by Dr. Aina. Thus, the ALJ rejected the reviewing consultants' opinions that Plaintiff could "never"

6

climb ladders, ropes or scaffolds, and further rejected their opinions that Plaintiff would have limitations in overhead reaching. (Tr. 23).

The Commissioner acknowledges the ALJ's error, (Doc. 14 at 6), but argues that the mistake constitutes "harmless error." (Doc. 14 at 6). So long as substantial evidence supports the same conclusion, and the errors are deemed "harmless," then this Court will affirm. *Keeton v. Com'r of Social Sec.*, 583 Fed. Appx. 515, 524 (6th Cir. 2014). In support of a finding that the error was harmless, the ALJ points to the ALJ's citation to "various examinations and statements from Plaintiff that showed that her limitations were not as severe as she alleged." (Doc. 14 at 7).

For example, the Commissioner cites to an initial exam with Dr. Singla on the same date as Dr. Aina's exam (10/18/16), where Plaintiff presented with a normal gait. At that appointment, Plaintiff reported severe back pain that "she can not live with… anymore." (Tr. 383). Although he recorded normal gait and full strength, Dr. Singla also found reduced range of motion in both lumbar/sacral and cervical spines due to pain. (Tr. 385). He prescribed a six-week thoracic stabilization plan with a follow-up MRI if her symptoms persisted. (Tr. 386). Considering the severity of pain reported to Dr. Singla on a date close in time to the alleged onset of disability, the undersigned does not agree that a finding of normal gait provides substantial support for the ALJ's finding that Plaintiff can stand and walk for at least six hours.[2]

For similar reasons, the undersigned does not agree that the "new patient appointment" record from Plaintiff's pain specialist dated 8/20/18 is sufficient to render

---

[2]There is no medical evidence to suggest that having a normal gait is equivalent to the ability to stand and walk for six hours. Plaintiff reported to Dr. Singla that she regularly used Vicodin when she had to walk "to do daily activities such as going to the store." (Tr. 383).

7

harmless the ALJ's mistaken evaluation of Dr. Aina's report. It is true that the record includes the phrase "Musculoskeletal: normal range of motion" among other summary findings. (Tr. 434). However, Dr. Chan also repeatedly references Plaintiff's severe back and neck pain. (Tr. 438-440). And at a follow-up appointment on 9/17/18, Dr. Chan noted decreased range of motion in Plaintiff's right hip as well as in her cervical and thoracic spine. (Tr. 451).

Finally, the Commissioner references the opinions of the two state agency physicians who concluded that Plaintiff could stand, walk and sit for six hours in an eight hour workday. (Tr. 85-86, 120). But their opinions provide little support for the ALJ's finding of light work for the reasons previously discussed; namely, the unexplained conflict between their opinions and Dr. Aina's report to which they gave "great weight." Although Dr. Aina's opinion is somewhat vague as to whether standing and walking for more than one hour is limited or precluded, or whether some functional accommodation could be made (such as jobs that allow positional changes), the consultants' failure to discuss any aspect of Dr. Aina's standing/walking opinion suggests an error of omission.

In sum, the ALJ's error is not harmless because substantial doubt exists as to whether the Commissioner would have made the same ultimate finding with that error removed from the picture. "Where a subsidiary finding is unfounded, the court will remand the case to the agency for further consideration ... if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture[.]' " *Berryhill v. Shalala,* No. 92–5876, 4 F.3d 993, 1993 WL 361792 at *7 (6th Cir. Sept. 16, 1993) (quoting *Kurzon v. U.S. Postal Serv.,* 539 F.2d 788, 796 (1st Cir.1976)). Here, the ALJ relied most upon Dr. Aina's report

8

to formulate the RFC. The ALJ's misstatement of a key finding in that report taints the entirety of the ALJ's analysis.

As additional support for the conclusion that the error was not harmless, Plaintiff points to medical records following Dr. Aina's examination that support restrictions more in line with the standing/walking opinions of Dr. Aina. One such record is a post-hearing functional consultative examination by a physical therapist that found her to be capable of no more than sedentary work. (Tr. 469-474). The ALJ gave that FCE "little weight" on grounds that "MPT Klusman completed this functional evaluation after the hearing following testimony by the vocational expert that indicated the claimant could perform her past relevant work at the light level and after my analysis on the record of some of the problems with this case – particularly with the past work issue." (Tr. 22). In addition, the ALJ accurately noted that the physical therapist was "not a treating medical source nor an acceptable medical source," under controlling regulations. (*Id.*) Ultimately, the ALJ concluded that the FCE "limitations are extreme when compared to the objective medical evidence of record that shows mostly normal observed physical functioning and a routine treatment history." (*Id.*) On the one hand, the ALJ's analysis of the FCE and of the physical therapist as not an acceptable medical source was entirely appropriate under SSR 06-3p (2006) and reflects no reversible error. Still, it remains an open question if the ALJ would have been as dismissive of the FCE if the ALJ had recognized the pain-related standing and walking limitations contained in Dr. Aina's report.

**2. The ALJ's Classification of Prior Relevant Work.**

Plaintiff's second claim is that the ALJ erred by failing to classify her prior relevant work as a composite job, involving some medium work, rather than as light work that Plaintiff ostensibly could perform with the RFC as determined. If Plaintiff is incapable of

9

past relevant work, then Grid Rules potentially apply. *See* 20 C.F.R. § 404.1569 (explaining that grid rules apply "where a person is not doing substantial gainful activity and is prevented…from doing vocationally relevant past work."). For instance, if Plaintiff could not perform her past relevant work and were further limited to sedentary work based upon postural limitations suggested by Dr. Aina, she would be presumptively disabled at age 54 under Grid Rule 201.141. And even if the ALJ were to conclude she can perform light work, another Grid Rule would indicate that she is disabled at age 55. The Commissioner does not disagree with the Grid Rule analysis,[3] but argues that the Grid Rules do not apply because (1) substantial evidence supports the ALJ's determination that Plaintiff could perform her past relevant work, which precludes application of the Grid Rules; and (2) substantial evidence supports the RFC determination of "light work" despite the ALJ's error in assessing Dr. Aina's opinion.

The undersigned rejects Plaintiff's "classification error" claim as waived on the record presented. After reviewing the record and listening to Plaintiff's testimony, the ALJ asked the vocational expert to characterize Plaintiff's past relevant work. (Tr. 63). The VE testified that Plaintiff's past work as a wiring harness assembler was light and semi-skilled. (*Id.*) Plaintiff's counsel did not raise any objections to the classification of the prior relevant work as by the VE at the hearing. Therefore, the ALJ was entitled to rely upon the VE's testimony. The failure to raise an objection to the VE's testimony at the hearing precludes Plaintiff's ability to challenge the classification of the prior relevant work before this Court. *Accord Gillman v. Com'r of Soc. Sec.*, 2017 WL 3301576 at **6-

---

[3]The potential applicability of the Grid Rules was discussed at the hearing, and there are several references in the administrative record that suggest that at one point in time, Plaintiff was considered to fall within a Grid Rule. (See Tr. 307, "now age 55 and pp 201.06"; see also Tr. 415).

7 (S.D. Ohio Aug. 3, 2017) (rejecting claim on judicial appeal that past work was a "composite job" because ALJ was entitled to rely upon VE testimony, which Plaintiff failed to question during the hearing), R&R adopted at 2017 WL 4296313 at **4-5 (S.D. Ohio Sept. 28, 2017) (affirming analysis including waiver); *see also Leeson v. Com'r*, 2016 WL 5358891 at *16 (S.D. Ohio Sept 14, 2015) (holding that ALJ properly relied on VE's testimony where the "VE did not testify that any [of] Plaintiff's past relevant work consisted of composite jobs.").

At the same time, remand is required to further review the record, including but not limited to Dr. Aina's opinion, to determine whether Plaintiff can perform light work. Notwithstanding Plaintiff's waiver of the classification error concerning Plaintiff's past relevant work, the VE's testimony that Plaintiff could perform her past relevant work was wholly dependent upon an RFC determination that assumed that Plaintiff could stand and walk up to six hours in a day. (Tr. 64-65). Therefore, the ALJ should reconsider whether Plaintiff can perform her past relevant work on remand.

### 3. The ALJ's Analysis of Plaintiff's Subjective Complaints

Plaintiff's third claim asserts that the ALJ erred by discounting her subjective complaints. At the end of the day, this is a case that hinges on whether or not Plaintiff's pain level results in standing and walking limitations that preclude light work.

Judicial deference is particularly important in evaluating subjective complaints. The assessment of such symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added). SSR 16-3p

11

emphasizes that "our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." *See id.* at *11. Under SSR 16-3p, an ALJ is to consider all of the evidence in the record in order to evaluate the limiting effects of a plaintiff's symptoms. *Id.*, 2017 WL 5180304, at *7-8 (listing factors); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c) and former SSR 96–7p. However, SSR 16-3p was not intended to substantially change existing law. *See Banks v. Com'r of Soc. Sec.*, Case No. 2:18-cv-38, 2018 WL 6060449 at *5 (S.D. Ohio Nov. 20, 2018) (quoting explicit language in SSR 16-3p stating intention to "clarify" and not to substantially "change" existing SSR 96-7p), adopted at 2019 WL 187914 (S.D. Ohio Jan. 14, 2019).

It remains the province of the ALJ and not the reviewing court, to assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See generally Rogers v. Com'r*, 486 F.3d at 247. Thus, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). A credibility/consistency determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Social Security regulations provide for the consideration of objective medical evidence as "a useful indicator to assist [the agency] in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work." 20 C.F.R. § 404.1529(c)(2). However, the regulation does not permit the rejection of subjective complaints "**solely** because the available objective medical evidence does not substantiate your

statements." *Id.* (emphasis added). Instead, the ALJ considers a variety of "other evidence" when evaluating subjective symptoms. 20 C.F.R. § 404.1529(c)(3) and (c)(4). Here, the ALJ found that the "[o]verall" record did not support the severity of Plaintiff's complaints," based in part upon her "infrequent, routine, and conservative treatment." (Tr. 23). The ALJ explained:

> I do consider her explanation that she has had some insurance and financial issues that interfered with treatment… However, even on dates when she was seen, examinations have been largely within normal limits as detailed above. I also note that she was not taking any medications at the time of the consultative examination in October 2016, reportedly because they were not helpful…. Records show that despite her complaints, the claimant retains a normal gait and no assistive device…. Her activities have included traveling to Florida at times…, which is inconsistent with the severity of pain and limitations alleged, due to the long travel required for such a trip. While the claimant does have a good work history, she stopped working at her longtime job because it was outsourced, rather than due to her impairments. Overall, the limited evidence of record does not support the severity of limitations the claimant alleged in this case.

(Tr. 23-24).

Plaintiff complains that the ALJ erred by describing her treatment as "conservative," arguing that the care she has received during the disability period includes physical therapy, pain medications[4], and treatment with pain doctors.[5] In addition, multiple exams showed limited range of motion and tenderness, and even Dr. Aina found an inability to squat or to walk on her heels and toes. (Tr. 376). Plaintiff also points to her 2018 EMG that showed carpal tunnel syndrome. (*See* Tr. 478). Last, Plaintiff questions the ALJ's reference to her Florida trips. With respect to the Florida trips, the record supports Plaintiff's suggestion that at least one long trip or temporary relocation

---

[4]Plaintiff testified that she preferred not to take narcotic pain medication because she had previously become addicted after being prescribed such medications. (Tr. 55).
[5]In addition to the treatment described during the disability period, the record reflects a history of three cervical spine and shoulder surgeries in 2007 and 2008. (Tr. 44, 263, 265, 281, 423, 429)

13

took place prior to her disability onset date, when Plaintiff briefly relocated to that state to live with her father. (Tr. 339-340). However, a separate record dated in January 2017, after the alleged onset of disability, reflects a two-week trip to see her mother, who she reported had dementia and was not doing well. (Tr. 117).

If the alleged error in evaluating plaintiff's subjective complaints were the only error asserted, it would not provide a sufficient basis to remand this case. However, because the fundamental error in assessing the medical opinion evidence may have impacted the ALJ's credibility determination, the ALJ should carefully apply SSR 16-3p on remand.

### 4. The Vocational Expert's Testimony

A vocational expert's testimony will provide substantial evidence to affirm a nondisability finding so long as all relevant limitations are included in the description of the RFC conveyed in the hypothetical question posed to the VE. *Howard v. Com'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir.2002). Again, because of the misstatement of the record with respect to Dr. Aina's opinions, the undersigned concludes that substantial evidence does not exist to support the hypothetical RFC posed to the vocational expert.

### III. Conclusion and Recommendation

Plaintiff urges this Court to direct an award of benefits, but the undersigned concludes that remand pursuant to sentence four of § 405(g) for further proceedings is more appropriate. It remains possible that on remand, the ALJ will evaluate Dr. Aina's report in such a way that continues to permit Plaintiff to work, since Dr. Aina stated only that standing and walking for more than an hour would be "affected," without articulating a specific degree of functional limitation. A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary.

See *Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of her alleged onset date. *Id.*, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT:** the decision of the Commissioner to deny Plaintiff DIB benefits is **REVERSED** and this matter is **REMANDED** under sentence four of 42 U.S.C. § 405(g) consistent with this R&R. As no further matters remain pending for the Court's review, this case is **CLOSED**.

 /s Stephanie K. Bowman  
Stephanie K. Bowman  
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| REGINA BARTON HUDSON, | Case No. 1:20-cv-212 |
| Plaintiff, | McFarland, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).